# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 5, 2014

## STATE OF TENNESSEE v. DEVAUGHN EDWARDS

**Appeal from the Criminal Court for Shelby County**
**No. 12-05320      J. Robert Carter, Jr., Judge**

**No. W2013-02009-CCA-R3-CD - Filed December 3, 2014**

The defendant, Devaughn Edwards, was convicted of three counts of facilitation of kidnapping, two of which subsequently were merged; two counts of facilitation of robbery, and one count of facilitation of aggravated burglary, for which he received an effective sentence of sixteen years. On appeal, he argues that the evidence was not sufficient to sustain the convictions for facilitation of kidnapping and that the court erred in imposing consecutive sentencing. Following our review, we affirm the judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROGER A. PAGE, J., joined.

James E. Thomas (on appeal) and Michael Burton (at trial), Memphis, Tennessee, for the appellant, Devaughn Edwards.

Herbert H. Slatery, III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Paul Hagerman and Anita Spinetta, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant's convictions resulted from the home invasion of a residence on Mud Island in Memphis by the defendant and three others, during which the two residents were robbed and one was beaten.

Tad Robbins testified that he was a lieutenant in the United States Navy and was

living on Mud Island on April 11, 2012. That evening, he and his wife heard a commotion coming from a neighbor's house, and he saw a Lincoln automobile backed into the driveway of a nearby vacant house. He observed two men entering "quickly" into the garage and went out his back door because he thought "there was something weird." He noticed that the car was "running" and returned to his house to call 911. As he watched, the garage door opened, and he saw two men leaving a house carrying a television set, a guitar, and a bag of other items. Two more men came out of the house, and they "loaded up" in the car to leave.

Jaredan Braal testified that he was a mechanical engineer for Medtronic. On April 11, 2012, he was living on Mud Island and returned home "around 10:45 or 10:50 at night" from teaching a dance class. He pulled into his garage, which was in an alley behind his house. As he was unloading items from his car, he saw a vehicle in front of the neighbor's house behind him. One of the two men at the car said he wanted to ask Mr. Braal a question, adding that he was looking for a particular street. They were joined by another man who soon produced a pistol, which he pointed at Mr. Braal. Mr. Braal then threw down his cell phone and wallet and ran into his garage but was hit in the head multiple times and fell to his hands and knees. Two of the men then entered Mr. Braal's house, while a third kept watch on him. Mr. Braal's roommate was brought from the house and made to lie down beside him. After the men loaded their vehicle with items from the victims' house, they asked for the PIN number for Mr. Braal's debit card, and he made up a number. The four men then left, and the victims telephoned 911 from a neighbor's telephone. Mr. Braal was hospitalized for twelve days as a result of his injuries. He identified the defendant as the person who hit him with the pistol.

Frederick Krafcik, Jr. testified that he was living on Mud Island on April 11, 2012, and was employed by the University of Tennessee Health Science Center, working at St. Jude Children's Research Hospital. He said that, during that evening, he was on the bed in his room when the door was kicked open and two men entered at pistol-point. They took different items, including cash, and ordered him to go downstairs to the garage, where he found his roommate already lying facedown and blood on the floor. He said that as "the criminals were still going back and forth in the house, removing items," he stayed facedown on the garage floor, as they ordered. After the men left, the two victims ran to neighbors for help, "knocking on doors, looking bloody and beaten up, [but] people weren't answering."

Mr. Krafcik said that he at first thought it was his roommate coming up the stairs, but then his door was kicked in. The man who came through the door pointed a pistol at him, and another man then came in, the two of them asking, "[W]here is the cash?" He said that the two men took his DVD player and computer, the cash from his wallet and, later, he discovered they had taken his cell phone. At gunpoint, he was made to go down the stairs

-2-

to the garage. He described his roommate, who already was in the garage:

> He did not look very good. I could see that there was blood on the floor of the garage and he was also laying [sic] face down. But, at one point when I got down there he turned his head and said, "I'm sorry," to me, because he thought that he was somehow to blame for this. And his face was beaten in and bloodied.

Mr. Krafcik said that at least three men came into the house, but "it sounded like there was a fourth person." He said that he had paid between $3000 and $3500 for the items the men took.

Officer Robert Forbert of the Memphis Police Department testified that he received a prowler call on April 11, 2012, to the victims' residence. Upon their arrival, officers found the door was open, the residence was ransacked, and there was a pool of blood in the garage. Officer Forbert learned that Mr. Braal was at a nearby address, where he went and found him on the floor, with others trying to stop the bleeding from his nose. Mr. Braal said his iPhone had been taken, and information was entered into Officer Forbert's iPhone to locate Mr. Braal's phone. An exact address was provided by the iPhone application, which was 2423 Manchester Road. Officer Forbert then went to that address, where he observed traveling south on the street a tan Lincoln Zephyr automobile, which matched the description the victim gave of the car the defendants were operating. Two African-American males were in the automobile, which the officer stopped. The vehicle was being driven by the defendant, whom the officer identified in the courtroom. At the residence, a male and female came to the door and were detained while a search warrant was obtained to search for the iPhone.

Officer Terrell Hunt of the Memphis Police Department testified that he was assigned to the Felony Response Unit. On April 12, 2012, he responded to a call to a residence on Manchester Road. A search warrant was obtained, and Officer Hunt entered the residence where he located a large television, matching the description of the one taken from the victims' residence. He also found at the residence an iPhone, a Mac 10 Notebook computer, a bulletproof vest, and a guitar. All of these were found in the bedroom of Adrian Henderson, one of the co-defendants.

Officer Justin Edward Sheriff, a crime scene investigator with the Memphis Police Department, testified that on April 12, 2014, he was called to photograph a 2006 Lincoln Zephyr and items taken from it at an auto shop located at Alcy and Manchester. He took photographs of the vehicle and a wine bottle which was inside it.

Sergeant Velynda Thayer of the Memphis Police Department testified that on April 12, 2012, she was assigned to investigate the home invasion and robbery that occurred on Mud Island, for which two suspects, one of whom was the defendant, were in custody. She advised the defendant of his Miranda rights, which he waived. The defendant gave a statement, admitting his participation in the crimes.

Patrece Edwards, the defendant's mother, was the only witness testifying in his behalf. She said she had not known that he was spending time with the three co-defendants.

## ANALYSIS

On appeal, the defendant argues that the State failed to present sufficient evidence to support his convictions for facilitation of kidnapping and erred in imposing consecutive sentences. We will review these claims.

### I. Sufficiency of the Evidence

The defendant's specific argument in this regard is that the State failed to present sufficient evidence of kidnapping beyond proof of the underlying felony. See State v. White, 362 S.W.3d 559, 578 (Tenn. 2012).

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given

> to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In White, the Tennessee Supreme Court ruled that "trial courts should specifically require a determination of whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is significant enough, standing alone, to support a conviction." 362 S.W.3d at 578. The court emphasized that it was not creating a new standard for kidnapping but, instead, was "merely providing definition for the element of the offense requiring that the removal or confinement constitute a substantial interference with the victim's liberty" and, thus, that its ruling in the case did not "articulate a new rule of constitutional law or require retroactive application." Id. To provide guidance, our supreme court set forth the following instruction to be issued by trial courts until an appropriate pattern jury instruction is developed:

> To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:
>
> · the nature and duration of the victim's removal or confinement by the defendant;
>
> · whether the removal or confinement occurred during the commission of the separate offense;
>
> · whether the interference with the victim's liberty was inherent in the nature of the separate offense;
>
> · whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in

preventing the victim from doing so;

· whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and

· whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

Id. at 580-81 (footnote omitted).

As we have set out, the defendant was convicted of various counts of facilitation of kidnapping, robbery, and burglary. A person facilitates a felony if, "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a).

The defendant argues on appeal that the "victims testified that they were forced to lay [sic] on the floor of the garage while the perpetrators in the home took things out," one victim saying he "believed the men were in the home 5 or 10 minutes." The shortness of this span did "not exceed that necessary to accomplish the accompanying felonies of [r]obbery and [a]ggravated [b]urglary," according to the defendant's argument. As we will explain, we disagree with this analysis.

As our supreme court explained in White, 362 S.W.3d at 576, "none of our kidnapping provisions require proof of a specific distance or period of time." Cf. State v. Dixon, 957 S.W.2d 532, 535 (Tenn. 1997) (noting that, with regard to aggravated kidnapping, "it is the purpose of the removal or confinement and not the distance or duration that supplies a necessary element of aggravated kidnapping"). In State v. Randy Lynn Shelby, No. M2006-02582-CCA-R3-CD, 2011 WL 795834, at *2, *4 (Tenn. Crim. App. Mar. 8, 2011), perm. app. denied (Tenn. June 2, 2011), where the accompanying felony was burglary, this court affirmed an especially aggravated kidnapping conviction where the victim had been detained and fought the defendant in her home for eight to ten minutes before escaping.

Based upon the evidence, in the light most favorable to the State, the jury could have reasonably concluded that the first victim was accosted by the defendant's companions in his driveway, where they took his wallet and cell phone at gunpoint. He was struck by the pistol and chased into his garage, where he was repeatedly struck in the head by a man he

"believed" was the defendant and detained there. The defendant remained in the garage with the first victim while two co-defendants entered the residence. The second victim was captured in his bedroom, as the defendant's companions kicked open the door and forced him at gunpoint to the garage, where he found his bloody and beaten housemate. Both victims were detained there by the defendant while their home was ransacked and looted. From this evidence, a jury could have reasonably concluded that the two victims were forced into the garage, where they could be controlled while the burglary and thefts were being committed, as well as being beaten or threatened to prevent their running for help. Based upon this proof, the jury easily could have found the defendant guilty of the charged offenses. However, he was determined to be guilty of facilitating each of the offenses. The record supports this determination. This assignment is without merit.

## II. Sentencing

The defendant also argues that the trial court erred in imposing consecutive sentencing, asserting the court did not make the findings, as required by State v. Wilkerson, 905 S.W.3d 933 (Tenn. 1995), that the defendant had little or no regard for human life and no hesitation in committing the crime.

The trial court may order multiple sentences to run consecutively if it finds by a preponderance of evidence that one or more of the seven factors listed in Tennessee Code Annotated section 40-35-115(b) apply, including that the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. Tenn. Code Ann. § 40-35-115(b)(4). When the court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it must also find that an extended sentence was necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offense committed. State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn.1995). As to consecutive sentencing, our standard of review is abuse of discretion with a presumption of reasonableness. State v. Pollard, 432 S.W.3d 851 (Tenn. 2013).

In this matter, the trial court determined, in deciding what enhancement factors should be applied, that the defendant had little or no regard for human life. Sergeant Thayer testified at the sentencing hearing that the defendant admitted participating in the crimes for which he had been tried, as well as three other robberies, and the court observed that this showed the defendant and others had set out on "a robbery spree, home invasion spree and that little if any regard to human life was employed there." Additionally, the court concluded that a "consecutive sentence [wa]s . . . necessary . . . to not minimize the horror of the series of events that were proven at the trial." The record abundantly supports these

-7-

determinations by the trial court to impose consecutive sentencing.

## **CONCLUSION**

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
ALAN E. GLENN, JUDGE